# THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| **LAYNE CABALLERO,** § | |
| *Plaintiff*, § | |
| § | |
| v. § | **CIVIL ACTION NO. 6:23-cv-35** |
| § | |
| **AUSTIN HANNAH,** § | |
| *Defendant.* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Plaintiff Layne Caballero, complaining of Austin Hannah, and for causes of action will respectfully show unto the Court as follows:

> "[A] constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest."
>
> *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018).

**SUMMARY**

On August 8, 2021, Officer Austin Hannah of the Hallettsville Police Department forced Layne Caballero to be repeatedly bitten by ants while subdued and restrained in handcuffs on the ground. Then, while Mr. Caballero was handcuffed on the ground, Officer Hannah struck him in the eye with a flashlight. The trumped-up charges Officer Hannah attempted to arrest Mr. Caballero on were subsequently declined by the County Attorney. This was an unnecessary and unreasonable use of force against Mr. Caballero that was clearly excessive to the need. Mr. Caballero now files this lawsuit against Officer Hannah for violating his constitutional rights under the Fourth Amendment to the United States Constitution to be free from excessive force.

**I.**
**PARTIES**

1. Plaintiff Layne Caballero is a resident of Lavaca County, Texas.

2. Defendant Austin Hannah is an individual residing in Lavaca County, Texas and is a police officer with the City of Hallettsville Police Department and may be served at his place of employment at the City of Hallettsville Police Department located at 104 E 4th St, Hallettsville, TX 77964, or wherever he may be found. Defendant Hannah is being sued in his individual capacity.

**II.**
**JURISDICTION AND VENUE**

3. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendant resides in the Southern District of Texas and all of the causes of action accrued in the Southern District of Texas in Lavaca County, Texas.

## III.
## FACTS AND ALLEGATIONS

5. On August 8, 2021, Plaintiff Layne Caballero was walking to the Stripes convenience store near his residence.

6. An officer drove past him as he walked.

7. The officer shined a light onto him as he drove by.

8. The officer turned around and shined the spotlight onto Mr. Caballero again as he was walking.

9. The officer then stopped and told Mr. Caballero that he was a suspicious person in the lumber yard.

10. Mr. Caballero was not even in the lumber yard but was simply walking to Stripes.

11. The officer asked if Mr. Caballero needed a ride.

12. Mr. Caballero told the officer that he did not need a ride and that he was just walking to the Stripes convenience store.

13. The officer called for another officer to come to the scene.

14. The first officer then frisked Mr. Caballero.

15. The officer stated he felt something in his pocket.

16. However, the only things in Mr. Caballero's pocket were cigarettes and money.

17. The officer went to talk to the responding officer.

18. The officers told Mr. Caballero he was <u>not</u> under arrest.

19. Mr. Caballero had committed no crime and had been cooperative with the officers allowing them to frisk him during this consensual encounter.

20. The officers then wanted to frisk Mr. Caballero again.

21. The second officer grabbed Mr. Caballero by the arm like he was going to place him into handcuffs.

22. Mr. Caballero became scared since he had done nothing wrong and had been cooperative with the officers.

23. Mr. Caballero had just been told he was not under arrest and he knew he had not committed any crimes.

24. Mr. Caballero ran away from the officers because he was scared as it was dark, around 1:00 AM in the morning, there were no other people around to witness what the officers were doing, Mr. Caballero had been cooperative during the consensual encounter with the officers but they were continuing to frisk him and were now attempting to place handcuffs onto him after telling him he was not under arrest.

25. By leaving, Mr. Caballero terminated the consensual encounter.

26. The officers chased Mr. Caballero.

27. Mr. Caballero eventually stopped running.

28. The officers caught up to him and detained him.

**Officer Hannah was Deliberately Indifferent to Ants Biting Mr. Caballero**

29. Officer Hannah restrained Mr. Caballero in handcuffs.

30. Officer Hannah ordered Mr. Caballero to lie on the ground while he was handcuffed and not to move.

31. Mr. Caballero was lying in ants.

32. Mr. Caballero told Officer Hannah he was lying in ants.

33. Mr. Caballero told Officer Hannah he was being bitten by the ants.

34. Mr. Caballero told Officer Hannah he was allergic to ant bites.

35. Mr. Caballero asked Officer Hannah to move him from the ants so they would stop biting him.

36. Officer Hannah told Mr. Caballero to shut his mouth – indicating that Officer Hannah heard Mr. Caballero asking to be moved from the ants that were biting him.

37. Officer Hannah refused to move Mr. Caballero from the ants that were biting him.

38. Below are pictures of Mr. Caballero taken after this incident showing the number of ant bites he suffered while handcuffed and lying in the ants. Each of the red dots are ant bites.



39. Officer Hannah was aware that Mr. Caballero was being bitten by ants as he was restrained on the ground in handcuffs at the order of Officer Hannah.

40. Officer Hannah knew he was being bitten by the ants because Mr. Caballero told Officer Hannah he was being bitten, that he was allergic to the bites, and asked to be moved.

41. Officer Hannah acknowledged that Mr. Caballero was asking to be moved out of the ants when Officer Hannah responded to Mr. Caballero to shut his mouth.

42. Officer Hannah also knew that Mr. Caballero could not wipe the ants off himself due to being restrained in the handcuffs Officer Hannah placed onto him.

43. Officer Hannah then refused to move Mr. Caballero out of the ants, knowing Mr. Caballero would continue to suffer ant bites as a result.

44. The Sheriff Deputy on scene eventually wiped the ants off Mr. Caballero and moved him from the ant bed.

45. This shows that Officer Hannah could have also wiped the ants off Mr. Caballero and move him from the ant bed, but chose not to do either.

**Officer Hannah Struck Mr. Caballero in the Eye While He was Restrained in Handcuffs**

46. While Mr. Caballero was restrained and subdued in handcuffs on the ground, Officer Hannah struck him in the eye with a flashlight.

47. Mr. Caballero was not fleeing when Officer Hannah struck him as he was subdued and restrained in handcuffs on the ground.

48. Mr. Caballero was not resisting when Officer Hannah struck him as he was subdued and restrained in handcuffs on the ground.

49. Mr. Caballero was not threatening anyone when Officer Hannah struck him as he was subdued and restrained in handcuffs on the ground.

50. Mr. Caballero complained of pain at the scene as a result of being struck in the eye and bitten by the ants and requested medical attention.

51. The officers on scene had to call Lavaca County Emergency Medical Services (EMS) to treat Mr. Caballero.

52. Mr. Caballero was attended to by the Lavaca County EMS.

53. Mr. Caballero was not taken to jail that night.

54. On August 11, 2021, a warrant was issued for his arrest for the charges of evading arrest and tampering with evidence, stemming from the police interaction on August 8, 2021.

55. Mr. Caballero did not commit the crime of evading arrest – as he was not lawfully detained when he fled from the police.

56. Mr. Caballero did not commit the crime of tampering with evidence as he did not tamper in any way with anything that could have been construed as evidence in any way.

57. On September 4, 2021, Mr. Caballero turned himself into the jail after he saw on Facebook that he had a warrant for his arrest.

58. On September 27, 2021, both criminal charges were declined by the County Attorney's office.



KYLE A. DENNEY
Lavaca County Attorney

September 27, 2021

TO: Hallettsville Police Department
Officer Austin Hannah

Defendant: **LAYNE MICHAEL HARVARD CABALLERO**
Date of Offense: **AUGUST 8, 2021**
Offense: **EVADING ARREST OR DETENTION**
Bond Type & Amount: **PR BOND $10,000.00**
Agency Case# **IR-21-000237**

The above charges are being declined by the County Attorney's Office and the bonds can be released.

Sincerely,

Kelly Bazié
Assistant Lavaca County Attorney

KB:alo

xc: Micah Harmon
    Lavaca County Sheriff's Office

    Claire Profilet
    Attorney At Law
    Texas Rio Grande Legal Aid

    Elizabeth A. Kouba
    Lavaca County Clerk

109 N. LaGrange, P. O. Box 576, Hallettsville, TX 77964; 361-798-4757; 361-798-2816 fax

## CASE DECLINE/REJECTION/TRANSFER

Agency: Hallettsville Police Department  
Report Number: IR-21-000237  
Officer: Austin Hannah  

Suspect: Layne Michael Caballero  
Date of Incident: 08/08/2021  
Offense: Tamper/Fabricate Physical Evidence with Intent to Impair  

Reason(s)

- ☐ Further Investigation needed before elements can be met
- ☐ Insufficient evidence to prove beyond a reasonable doubt (successful prosecution unlikely)
- ☐ Taken into consideration for another case
- ☐ Missing / Unavailable / Recanting / at Request of Complaining Witness
- ☐ Witness Credibility Issues
- ☐ No or insufficient affirmative link
- ☒ Interest of Justice (successful prosecution unlikely)
- ☐ No reasonable suspicion / probable cause
- ☐ Old case (speedy trial issue)
- ☐ Defendant has legal defense / justification to charge
- ☐ Article 38.22 issues (recordings)
- ☐ Co-Defendant taken responsibility for crime
- ☐ Candidate / Completed Pre-Trial Diversion
- ☐ Transfer / File as Misdemeanor (PC 12.44, Not Felony, Interest of Justice)

Other: _____

Explanation: _____

_Kerry Bgn_ (signature)  
Prosecutor

9/27/21  
Date

59. As a result of being left in an ant pile for ants to bite him over 40 times and being struck in the eye with a flashlight while he was restrained in handcuffs, Mr. Caballero suffered physical injuries, and physical pain and suffering, including pain to his shoulder and eye.

60. Mr. Caballero's injuries were not caused by any other means.

61. Defendant Hannah was at all times acting under the color of law as he was on duty in full uniform and arrested Mr. Caballero.

## IV.
## CAUSES OF ACTION

### Count One

### Excessive Force – Striking with Flashlight
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Austin Hannah

62. Mr. Caballero repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

63. Acting under the color of law, Defendant Hannah deprived Mr. Caballero of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

64. Mr. Caballero brings this cause of action pursuant to 42 U.S.C. § 1983.

65. The amount of force used by Defendant Hannah against Mr. Caballero as described above, specifically but not limited to, when Defendant Hannah struck Mr. Caballero in the eye with a flashlight while Mr. Caballero was already restrained in handcuffs was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

66. Fourth Amendment excessive force claims are analyzed under an objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388 (1989).

67. To prevail on a Fourth Amendment excessive force claim, Plaintiff must establish (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

68. "[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible-that is, objectively unreasonable under the circumstances." *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008).

69. The "reasonableness" inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397.

70. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

71. Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville*, 567 F.3d at 167.

72. A constitutional violation occurs when an officer tases, <u>strikes</u>, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018).

73. Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Id*.

74. The Fifth Circuit has held that an officer uses excessive force when he slams a plaintiff's face into a vehicle when the plaintiff is handcuffed and subdued. *See Bush,* 513 F.3d at 501-02.

75. When discussing whether the law is clearly established for purposes of qualified immunity, the Fifth Circuit has explained that, "[t]he central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer,* 536 U.S. 730, 740 (2002)).

76. At the time of Plaintiff's arrest, the law was clearly established that, although the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," the permissible degree of force depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee. *Graham,* 490 U.S. at 396.

77. Here, Mr. Caballero had not committed any crime as he simply terminated a consensual encounter when he ran away and there was no evidence to support a tampering with evidence charge. This is supported by the fact that both charges were declined by the County Attorney's office. Further, even if Officer Hannah did reasonably suspect Mr. Caballero of committing these crimes, they are not violent crimes by any stretch of the word.

78. Additionally, at the time force was used – when Defendant Hannah struck Mr. Caballero in the eye with a flashlight – Mr. Caballero was not fleeing or resisting as he was

subdued in handcuffs on the ground. For the same reason, Mr. Caballero did not present a credible threat to Officer Hannah.

79. Accordingly, while the Fourth Amendment's reasonableness test is "not capable of precise definition or mechanical application," the test is clear enough that Defendant Hannah reasonably should have known that he could not strike Mr. Caballero in the face with a flashlight while he was restrained and subdued in handcuffs on the ground. *Bush,* 513 F.3d at 502; *Hope,* 536 U.S. at 740.

80. A reasonable officer would know that this use of force was <u>clearly excessive</u> when engaging with citizens such as Mr. Caballero, who was not threatening any officer or other person, was only suspected of non-violent violations, was not attempting to flee, was not resisting arrest, and who the use of force was not warranted because he was restrained and subdued in handcuffs on the ground.

81. A reasonable officer would know that this use of force was <u>clearly unreasonable</u> when engaging with citizens such as Mr. Caballero, who was not threatening any officer or other person, was only suspected of non-violent violations, was not attempting to flee, was not resisting arrest, and who the use of force was not warranted because he was restrained and subdued in handcuffs on the ground.

82. As a direct result of the force used against him by Defendant Hanna, Mr. Caballero suffered physical injuries and physical pain and suffering.

83. Mr. Caballero's injuries included a swollen eye and pain in his face and head.

84. These injuries were not caused by any other means.

## Count Two

### Excessive Force – Causing Ant Bites
### Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Austin Hannah

85. Mr. Caballero repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

86. Acting under the color of law, Defendant Hannah deprived Mr. Caballero of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

87. Mr. Caballero brings this cause of action pursuant to 42 U.S.C. § 1983.

88. The amount of force used by Defendant Hannah against Mr. Caballero as described above, specifically but not limited to, when Defendant Hannah forced Mr. Caballero to remain in an ant bed and to continue being bitten by ants while he was restrained and subdued in handcuffs was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

89. Fourth Amendment excessive force claims are analyzed under an objective reasonableness standard. *Graham,* 490 U.S. at 388.

90. To prevail on a Fourth Amendment excessive force claim, Plaintiff must establish (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. *Deville*, 567 F.3d at 167.

91. "[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible-that is, objectively unreasonable under the circumstances." *Bush,* 513 F.3d 501.

92. The "reasonableness" inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397.

93. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

94. Although officers may need to use "physical force ... to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman*, 703 F.3d at 763; quoting *Deville*, 567 F.3d at 167.

95. Forcing someone to endure ant bites at the scene of an arrest was discussed by the United States District Court for the District of Arizona in 2006. *Perry v. Post*, No. CIV 04-2842-PHX-JAT, 2006 WL 3333092, at *4 (D. Ariz. Nov. 16, 2006).

96. In *Perry*, the Court explained that "[t]he Supreme Court did not need to create a catalogue of all the acts by which cruel and sadistic purpose to harm another would be manifest; but if it had, such an act would be near the top of the list." *Id.*; quoting *Watts v. McKinney*, 394 F.3d 710, 712 (9th Cir. 2005).

97. In *Perry*, the Court found that, "Purposefully dragging someone into an ant bed to be bitten might not be near the top of the Supreme Court's list [of acts by which cruel and sadistic purpose to harm another would be manifest] but the conduct definitely would make the list." *Id.*

98. The Court in *Perry* found that causing someone to be bitten by ants during an arrest was a Fourth Amendment violation and the Defendant officer was on notice under the reasoning of *Hope v. Pelzer*. *Id.*; citing *Hope*, 536 U.S. at 741.

99. For the same reasoning, Defendant Hannah in this case was on notice that forcing Mr. Caballero to endure at least 40 ant bites while restrained and subdued in handcuffs on the ground was a violation of his Fourth Amendment rights. *Perry*, No. CIV 04-2842-PHX-JAT, 2006 WL 3333092, at *4; *Hope*, 536 U.S. at 741.

100. Further, the *Graham* analysis prohibits this use of force as Mr. Caballero was not suspected of a violent offense, not attempting to flee or resist, and not a threat as he was on the ground subdued and restrained in handcuffs. *Graham,* 490 U.S. at 396.

101. When discussing whether the law is clearly established for purposes of qualified immunity, the Fifth Circuit has explained that, "[t]he central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney,* 367 F.3d at 350; quoting *Hope,* 536 U.S. at 740.

102. Accordingly, while the Fourth Amendment's reasonableness test is "not capable of precise definition or mechanical application," the test is clear enough that Defendant Hannah reasonably should have known that he could not force Mr. Caballero to be bitten repeatedly by ants while he was restrained and subdued in handcuffs on the ground. *Perry*, No. CIV 04-2842-PHX-JAT, 2006 WL 3333092, at *4; *Hope*, 536 U.S. at 741; *Graham,* 490 U.S. at 396.

103. As a direct result of this force used against him by Defendant Hanna, Mr. Caballero suffered physical injuries and physical pain and suffering.

104. Mr. Caballero's injuries included painful ant bites and swelling on his shoulder and torso.

105. These injuries were not caused by any other means.

## V.
## **PUNITIVE DAMAGES**

106. Mr. Caballero repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

107. When viewed objectively from the standpoint of Defendant Hannah, at the time of the occurrence, Defendant Hannah's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

108. As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Hannah which was recklessly or callously indifferent to Mr. Caballero's constitutionally protected rights, Mr. Caballero is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## **DAMAGES**

109. Mr. Caballero repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

110. Mr. Caballero's injuries were a foreseeable event and were directly and proximately caused by the excessive force used against him and the deliberate indifference shown to his health and safety, both by Defendant Hannah.

111. As a result, Mr. Caballero is entitled to recover all actual damages allowed by law. Mr. Caballero contends Defendant's conduct constitutes malice, evil intent, or reckless or callous indifference to Mr. Caballero's federally protected rights. Thus, Mr. Caballero is entitled to punitive damages against Defendant Hannah.

112. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mr. Caballero was forced to suffer: Physical injuries, and physical pain and suffering.

113. Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

114. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

115. Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant Hannah, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself to be justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Attorney-in-charge
Texas Bar No. 24105721
Federal ID No. 3244213

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Of counsel
Texas Bar No. 00797196
Federal ID No. 1751291

*/s/ Breanta Boss*
BREANTA BOSS,
Of counsel
Texas Bar No. 24115768
Federal ID No. 3738118

                                          SCOTT H. PALMER, P.C.
                                        15455 Dallas Parkway, Suite 540
                                        Addison, Texas 75001
                                        Telephone: 214.987.4100
                                        Facsimile: 214.922.9900
                                        james@scottpalmerlaw.com
                                        scott@scottpalmerlaw.com
                                        breanta@scottpalmerlaw.com

                                        COUNSEL FOR PLAINTIFFS